USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: SEP 23 2015

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

―――――――――――――――――――――――――――

Rachel Lisa Arfa

                   Debtor,

―――――――――――――――――――――――――――

Rachel Lisa Arfa,

                   Appellant,

    -v-

Roni LLC, et al.

                   Respondents.

―――――――――――――――――――――――――――

14-CV-7895 (AJN)

MEMORANDUM &
ORDER

ALISON J. NATHAN, District Judge:

    This case concerns a bankruptcy court determination on the nondischargability of debt under 11 U.S.C. § 523(a)(2)(A). That section provides: "A discharge [in bankruptcy] . . . does not discharge an individual debtor from any debt . . . for money, property, [or] services . . . to the extent obtained by – false pretenses, a false representation, or actual fraud." 11 U.S.C. § 523(a)(2)(A). Here, a group of investors from Roni LLC, Eshel Properties, LLC, Gili Holdings LLC, and KRR Investments, LLC (collectively "Respondents") has sought to prevent Ms. Rachel Lisa Arfa ("Appellant") from discharging in bankruptcy a New York Supreme Court judgment in their favor. Appellant appeals from the order entered by Bankruptcy Judge Glenn on August 28, 2014 finding the debt nondischargeable. *See* 14-CV-7895 Dkt. No. 1. For the following reasons, the judgment of the bankruptcy court is affirmed.

1

I.  **BACKGROUND**

   A.  **Underlying Real Estate Investment**

   In the early 2000s, Appellant, a licensed real estate broker and former attorney for the Securities and Exchange Commission ("SEC"), was a promoter for limited liability companies ("LLCs") purchasing and managing residential real estate in New York City. Resp. Br. at 3. From mid-2002 to early 2005, Appellant and her business associates solicited Israeli investors to acquire multi-family residential properties in New York City. *Id.* at 4. During this time, Appellant failed to disclose to the investors certain commissions she would receive in connection with the transactions which substantially increased the cost of acquiring the properties. *Id.* at 4.

   B.  **The State Court Action**

   In 2007, the investors (twenty-five LLCs and thirty-three individuals) consolidated their claims by assigning them to a smaller group within the investors, the named Respondent LLCs in the instant case. *See* 13-BR-01526 Dkt. No. 10 Ex. 1 at 5. Thereafter, Respondents commenced an action against Appellant and her business associates in New York State Supreme Court, asserting claims for breach of fiduciary duty, actual fraud, and constructive fraud. *See* App. Item No. 1 Ex. B at 2. On June 27, 2013, Justice Ramos granted summary judgment, finding in favor of Respondents on the claims for breach of fiduciary duty and constructive fraud without ruling on the claim for actual fraud. *Id.* at 20. Importantly, Justice Ramos made no finding regarding Appellant's intent to deceive the investors, which was not an element of the charges in that proceeding. *Id.* at 6-18.

   C.  **The Bankruptcy Proceeding**

   On July 25, 2013, Appellant filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code. *See* 13-BR-12433 Dkt. No. 1. On October 1, 2013, Respondents filed a

2

complaint in Appellant's bankruptcy proceeding to render her state court judgment to them nondischargeable under 11 U.S.C. § 523(a)(2)(A). *See* App. Item No. 1. Respondents then moved for summary judgment on their nondischargability claim, arguing Appellant was collaterally estopped from denying Justice Ramos's findings, which established all the necessary elements of nondischargability. *See* 13-BR-01526 Dkt. No. 7 at 2. In an order dated March 4, 2014, Judge Chapman, who was originally assigned the matter, denied the motion because Justice Ramos had made no finding regarding intent to deceive, a required element under § 523(a)(2)(A). *See* App. Item No. 11. Judge Chapman did, however, find Appellant collaterally estopped from denying (1) that Promoters made false representations and omission to the Respondents; (2) that the Respondents relied on the false representations and omissions; (3) that Respondents sustained a loss of $5,848,648.30 as the proximate consequence of the false representation or omission; and (4) that the assignments of claims to Respondents were valid. *Id.* at 1-2. Judge Chapman then ordered a trial limited in scope to the following issues: (1) the Appellant's "reckless disregard and intent to deceive"; and (2) whether Appellant "herself made the misrepresentations and/or omissions at issue." *Id.* at 2.

The debtor's chapter 7 case and the related adversary proceeding were transferred to Judge Glenn on June 9, 2014. *See* 13-BR-01526 Dkt. No. 18. Judge Glenn held a trial on June 26, 2014 limited to the issues reserved for trial by Judge Chapman's summary judgment order: whether the Appellant herself made the false representations and omissions at issue with the required intent to deceive. *See* App. Item No. 22. On August 28, 2014, Judge Glenn entered a ruling following a bench trial, finding the state court judgment nondischargable under § 523(a)(2)(A). *Id.* at 2.

On September 30, 2014, Appellant filed a Notice of Appeal with the district court of the Southern District of New York, challenging Judge Glenn's August 28, 2014 ruling. *See* 14-CV-7895 Dkt. No. 1.

## II.  STANDARD OF REVIEW

11 U.S.C. § 523(a)(2)(A) provides that a "discharge [in bankruptcy] . . . does not discharge an individual debtor from any debt . . . for money, property, [or] services . . . to the extent obtained by – false pretenses, a false representation, or actual fraud." § 523(a)(2)(A). Appellant argues primarily that there is insufficient evidence of her intent to deceive, a required element of nondischargability under § 523(a)(2)(A). In addition, Appellant challenges the bankruptcy court's collateral estoppel ruling and argues that nondischargability in this case is more properly considered under 11 U.S.C. § 523(a)(4).

A district court has "jurisdiction to hear appeals . . . from orders and decrees [] of bankruptcy judges." 28 U.S.C. § 158(a)(3). On appeal, the bankruptcy court's legal conclusions are reviewed *de novo*, but findings of fact are reversed only when "clearly erroneous." *Kuhl v. United States*, 467 F.3d 145, 147 (2d. Cir. 2006) (citation omitted) (*per curiam*). A finding is "clearly erroneous" when "the reviewing court . . . is left with the definite and firm conviction that a mistake has been committed." *Anderson v. City of Bessemer City, N.C.*, 470 U.S. 564, 573 (1985).

## III.  INTENT TO DECEIVE

The elements of 11 U.S.C. § 523(a)(2)(A) incorporate the common law of torts and are interpreted in light of the Restatement (Second) of Torts. *See Field v. Mans*, 516 U.S. 59, 69-70 (1995); *In re Chase*, 372 B.R. 125, 130 (Bankr. S.D.N.Y. 2007). To demonstrate

nondischargability due to false representation under § 523(a)(2)(A), a creditor must establish five elements: (1) that "the debtor made a false representation"; (2) "the debtor knew the representation was false at the time it was made"; (3) the debtor made the representation with the intent to deceive the creditor; (4) the creditor justifiably relied on the representation, and (5) the creditor sustained loss or damage as the proximate consequences of the false, material representation. *In re Fenti*, No. 94-5025, 1994 WL 16167976 (2d Cir. 1994); *In re Hartley*, 479 B.R. 635, 641 (S.D.N.Y. 2012). Each element must be proved by a preponderance of the evidence. *See Grogan v. Garner*, 498 U.S. 279, 286 (1991).

As will be discussed in greater depth below, Judge Chapman held that collateral estoppel applied to Justice Ramos's findings of fact regarding false representation and omission, materiality, reliance, and damages. *See* App. Item No. 11 at 1-2. Thus, the Appellant's intent to deceive was the sole subject of the bench trial before Judge Glenn, who found she possessed the requisite intent under § 523(a)(2)(A). *See id.* at 2; App. Item No. 22 at 33-39. Generally, intent to deceive is an issue of fact and the bankruptcy court's finding on intent should only be set aside if clearly erroneous. *See In re Hartley*, 479 B.R. at 642 (citing *In re Bonnanzio*, 91 F.3d 296, 302 (2d Cir. 1996)).

Appellant makes two arguments bearing on intent. First, Appellant argues that reckless disregard of an omission cannot, as a matter of law, constitute the requisite intent to deceive. Second, Appellant argues that her belief that an LLC promoter owed no fiduciary duty to potential investors negates any possible intent to deceive. Neither of these arguments has merit.

### A.  Reckless Disregard of an Omission

The Second Circuit has held that intent to deceive under §523(a)(2) may be satisfied if the debtor acted with reckless disregard for the truth; in such a case, recklessness is to be

determined based on the totality of the circumstances. *See In re Bonnanzio*, 91 F.3d 296, 301 (2d Cir. 1996) ("[I]ntent to deceive can be inferred from the totality of circumstances, including reckless disregard."). Appellant argues that reckless disregard involving an omission is fundamentally different than reckless disregard involving an affirmative representation, and thus cannot as a matter of law satisfy § 523(a)(2)(A)'s intent to deceive requirement. Because Appellant's arguments on reckless disregard and omission are questions of law, the Court will review the bankruptcy court's ruling on these issues *de novo*. *See Kuhl*, 467 F.3d at 147. Under this standard, Appellant's argument fails.

Appellant argues that the reckless disregard approach to intent is not appropriate for omissions because "[s]ilence has never been the basis of a holding of reckless disregard in a discharge case." App. Br. at 11. To the contrary, "[t]he law is well settled . . . that so-called "half-truths"—literally true statements that create a materially misleading impression—will support claims for . . . fraud" under a reckless disregard theory. *S.E.C. v. Gabelli*, 653 F.3d 49, 57-58 (2d Cir. 2011) *rev'd on other grounds*, 133 S. Ct. 1216 (2013) (citing *List v. Fashion Park, Inc.*, 340 F.2d 457, 462 (2d Cir.1965)). This general principle has also been applied to the bankruptcy discharge context. In *In re Capelli*, the bankruptcy court found debt nondischargeable because the Debtor-Defendant omitted liabilities amounting to about $137,000 from an itemized financial statement. 261 B.R. 81, 90 (Bankr. D. Conn. 2001). While the disclosed financial information was true, the bankruptcy court found that omitting $137,000 in assets provided an overall misleading financial picture. *Id.* at 92. As the bankruptcy court explained, "the failure to include over $137,000 in debt in the Financial Affidavit constitutes reckless disregard and total indifference to the truth" giving rise to "the requisite intent to deceive." *Id.* at 92.

The facts of *In re Capelli* closely resemble the facts of this case as found by Judge Glenn, as both cases involve "half-truths." Just as the Debtor-Defendant *In re Capelli* disclosed some financial information, but withheld other such information, Judge Glenn found that Appellant "disclos[ed] other fees associated with the Transactions but disguise[ed] the Commissions." App. Item No. 22 at 33. Applying a reckless disregard standard to such half-truths is not a "novel and radical extension of existing law," *see* App. Br. at 13, but a "well settled" theory of fraud liability. *Gabelli*, 653 F.3d at 57-58.

Nevertheless, Appellant argues that it is impossible to determine whether someone was reckless in omitting something. App. Br. at 12. Critically, whether a particular omission rises to the level of reckless disregard is a factual determination owed considerable deference. *See In re Hartley*, 479 B.R. at 642. As the facts in *In re Capelli* demonstrate, awareness of the omission and the credibility of the explanation offered for it play a central role in the "totality of the circumstances" standard for evaluating recklessness. *See In re Capelli*, 261 B.R. at 92; *In re Bonnanzio*, 91 F.3d 296, 301 (2d Cir. 1996). Judge Glenn's analysis focused on Appellant's awareness that the Commissions were not disclosed coupled with the lack of credibility of her explanation for the lack of disclosure. *See* App. Item No. 22 at 37-39. His determination that Appellant's selective omissions rose to the level of reckless disregard should not be disturbed unless clearly erroneous.

In his analysis, Judge Glenn found that Appellant knowingly refused to disclose material evidence about the Commissions and in so doing, acted with reckless disregard to the false impression created by her omission. As Judge Glenn explained, the Promoters disclosed a variety of fees to the investors, but failed to disclose the Promoter Commissions. App. Item No. 22 at 37. Judge Glenn found that this "created a false impression that all of the fees the

Promoters would collect in the Transactions were disclosed in the Set Ups." *Id.* at 38. Because Appellant was an experienced lawyer and former SEC attorney, Judge Glenn found she was aware of fraud liability for half-truths, and thus that proceeding to disclose the arrangement in this way demonstrated at a minimum a reckless disregard for the truth, if not outright intent to deceive. *Id.* at 38. Although Appellants argued in the bankruptcy court that nondisclosure of the Commissions was not motivated by intent to deceive, but intent to keep personal compensation confidential, Judge Glenn found this explanation not to be credible. *Id.* at 27-29. Because Judge Glenn found that Appellant concealed the Commissions intending to deceive the Plaintiffs as to their existence, he found the debt to be nondischargeable. *Id.* at 39.

Judge Glenn's finding is not clearly erroneous. The deal disclosed other fees that would be paid by investors, but excluded mention of the Commissions benefiting Appellant. It is not clearly erroneous to conclude that this creates the false impression that all such fees were disclosed. Similarly, given Appellant's sophisticated background, *see In re Bonnanzio*, 91 F.3d 296, 301 (2d Cir. 1996), it is not clearly erroneous to conclude that the half-truth of disclosing certain fees while withholding information of the Commissions was done with, at minimum, reckless disregard as to whether it would create a false impression. Because this Court lacks a "definite and firm conviction that a mistake has been committed" by the bankruptcy court, *see Anderson*, 470 U.S. at 573, Judge Glenn's determination that intent to deceive could be inferred from Appellant's reckless disregard for the false impression created by her failure to disclose the Commissions is affirmed.

**B.    LLC Promoter Liability**

Appellant further argues that the unsettled state of LLC promoter liability at the time of the relevant transactions negates her intent to deceive. While she concedes that the New York

8

Court of Appeals affirmatively articulated such liability in 2011, she notes that the relevant transactions in this case were conducted between 2002 and 2005. At that time, Appellant argues, she (a licensed broker and former SEC attorney) did not believe that promoters of an LLC owed a duty to investors. The crux of Appellant's argument is that because she genuinely believed she had no fiduciary obligation to disclose information about the Commissions, she lacked the requisite intent to deceive. *See* App. Br. at 16. Although Appellant attempts to present this argument as a legal question, it is really two factual questions. First, did Appellant genuinely believe she owed no fiduciary duty to the investors? Second, if Appellant genuinely believed she owed no fiduciary duty to investors, is there some other basis on which to find an intent to deceive?

On the second question, Judge Glenn made clear that his conclusion on Appellant's intent to deceive with half-truths was independent of the existence of any fiduciary duty. *See* App. Item No. 22 at 34 ("[T]he half-truth would be sufficient to establish that the Debtor committed an actionable misrepresentation with reckless disregard for the truth."). This Court agrees. Thus, even if Appellant owed no fiduciary duty to disclose the Commissions, crafting a transaction that selectively disclosed certain fees but omitted others satisfies the requisite intent element of § 523(a)(2)(A) if, as here, there was a finding of reckless disregard for the false impression created by such a structure.

Nevertheless, turning to the alternative question of fiduciary duty, much of Appellant's argument merely articulates a factual disagreement with Judge Glenn. Appellant argues that she "thought she was disclosing true information to the extent required under the law." App. Br. at 11-12. Similarly, Appellant insists that "under the state of the law before 2011, [she] genuinely believed she had no fiduciary obligation to disclose any information." *Id.* at 16. At her trial

9

before Judge Glenn, Appellant testified at numerous points that she did not know she had a fiduciary duty to the Israeli investors. *See* App. Item No. 22 at 27-28.

Importantly, the question before Judge Glenn was not the legal question of the state of LLC promoter liability in 2002, but the factual question of whether Appellant genuinely believed she did not owe a fiduciary duty to the investors. To inform his credibility evaluation, however, Judge Glenn analyzed the law on LLC promoter liability under the theory that it would strain credulity for a sophisticated former SEC attorney to deny awareness of well-settled principles of fiduciary duty. *See* App. Item No. 22 at 34-36. Even if this aspect of Judge Glenn's analysis is subject to *de novo* instead of clearly erroneous review, this Court affirms Judge Glenn's determination on Appellant's intent to deceive.

Judge Glenn cited cases dating back to the nineteenth century on corporate promoter liability and cases as early as 1968 on non-corporate promoter liability. *See* App. Item No. 22 at 36 (citing *Post v. United States*, 407 F.2d 319, 329 (D.C. Cir. 1968) ("We perceive no basis, either in law or in logic, for restricting [the law on promoter liability] to stock corporations.")). Judge Glenn also considered Appellant's evidence on the question, an amicus brief and numerous news clippings purporting to express shock at the extension of promoter liability to LLCs. However, Judge Glenn found that the New York Court of Appeals decision on LLC promoter liability was neither radical nor unprecedented. *See* App. Item No. 22 at 36.

The text of the New York decisions supports that finding. When the Appellate Division considered the question of LLC promoter liability in 2010, it easily analogized the LLC to a corporation in a short opinion. *See Roni LLC v. Arfa*, 74 A.D.3d 442, 444 (N.Y. App. Div. 2010) ("It is well settled that both before and after a corporation comes into existence, its promoter acts as the fiduciary of that corporation and its present and anticipated shareholders . . . . By

extension, the organizer of a limited liability company is a fiduciary of the investors it solicits to become members."). Similarly, the Court of Appeals readily found a fiduciary relationship in the LLC promoter context under the prevailing understanding of fiduciary relationships. *See Roni LLC v. Arfa*, 18 N.Y.3d 846. 848 (2011) ("[A] fiduciary relation exists when confidence is reposed on one side and there is resulting superiority and influence on the other."). The straightforward nature of these holdings supports Judge Glenn's understanding that the decisions did not create an "unprecedented new fiduciary duty." *See* App. Item No. 22 at 34.

At the end of the day, Judge Glenn noted he "[did] not find credible [Appellant's] claim that she could not possibly have known that she owed a fiduciary duty to the Plaintiffs." *Id.* at 35. Judge Glenn did not base this conclusion solely on his reading of the case law. Instead, he referred extensively to Appellant's testimony at trial. Judge Glenn noted that Appellant's position on the disclosure of the Commissions had changed over the course of the litigation: While Appellant initially contended the Commissions were properly disclosed, she later admitted that they were not disclosed, but offered excuses as to why. *Id.* at 27. Judge Glenn also noted Appellant's "insouciant, take-it-or-leave-it" attitude negatively impacted her credibility. *Id.* at 29. In light of these factors, Judge Glenn rejected Appellant's contention that she genuinely believed she owed no fiduciary duty to the investors. *Id.* at 29-30. Because Judge Glenn rejected that argument and this Court lacks a "definite and firm conviction that a mistake has been committed", *see Anderson*, 470 U.S. at 573, the bankruptcy court's determination on Appellant's intent to deceive on the alternative fiduciary duty ground is affirmed.

IV. **COLLATERAL ESTOPPEL**

In addition to her arguments as to the factual findings made by the bankruptcy court about the intent to deceive, Appellant challenges Judge Chapman's summary judgment ruling

11

affording preclusive effect to Justice Ramos's findings in the earlier state court proceeding. *See* App. Item No. 11.

A.  **Jurisdiction to Hear Appellant's Challenge to Judge Chapman's Ruling**

A district court can only review bankruptcy orders designated in the notice of appeal. *In re Dana Corp.*, 412 B.R. 53, 59 (S.D.N.Y. 2008) (citing *Shrader v. CSX Trans., Inc.*, 70 F.3d 255, 256 (2d Cir. 1995)); *see also* Fed. R. Bankr. P. 8003(a)(1). However, notices of appeal should be construed "liberally, taking the parties' intentions into account." *Shrader*, 70 F.3d at 256. If a party's intent to appeal a judgment is "manifest" considering the "notices and the appeal papers together," a court has jurisdiction over the appeal. *Foman v. Davis*, 371 U.S. 178, 181 (1962).

Construing notices of appeal liberally does not mean all errors are ignored. *See Shrader*, 70 F.3d at 256 (court lacked jurisdiction over the appeal of dismissal of one claim when the Notice of Appeal designated dismissal of another claim on a different date). Merely raising an issue in one's brief does not make intent to appeal "manifest." *See id.* (court lacked jurisdiction over appeal despite extensive briefing). Most cases finding "manifest" intent to review despite involve orders denying motions to vacate or reconsider an underlying judgment. *See Foman*, 371 U.S. at 181; *United States v. Schwimmer*, 968 F.2d 1570, 1574-75 (2d Cir. 1992)). That is not the case here.

Because Appellant's notice of appeal fails to designate Judge Chapman's summary judgment ruling, *see* Dkt. No. 1, and the intent to appeal that particular judgment is not "manifest," the Court has no jurisdiction to review Judge Chapman's determinations on collateral estoppel.

### B. Judge Chapman's Determinations on Collateral Estoppel

"Although [the Court] do[es] not have jurisdiction" over Appellant's challenge to Judge Chapman's summary judgment order, the Court "wish[es] to note for completeness" that preclusion was properly applied to Justice Ramos's findings. *Quanta Specialty Lines Ins. Co. v. Investors Capital Corp.*, 403 F. App'x 530, at *2 (2d Cir. 2010); *see also R. Brown & Sons, Inc. v. Rathe Salvage, Inc.*, No. 13-CV-317 (JGM), 2015 WL 791611, at *2 (D. Vt. Feb. 25, 2015) (evaluating the merits of the bankruptcy court judgment despite improper designation on the notice of appeal).

28 U.S.C. § 1738 directs courts determining the collateral estoppel effect of state judgments to apply the preclusion law of the state in which the judgment was rendered. 28 U.S.C. § 1738; *see also Marrese v. Am. Acad. of Orthopaedic Surgeons,* 470 U.S. 373, 380 (1985). In New York, collateral estoppel "precludes a party from relitigating in a subsequent action or proceeding an issue clearly raised in a prior action or proceeding and decided against that party." *Burgos v. Hopkins*, 14 F.3d 787, 792 (2d Cir. 1994) (quoting *Ryan v. New York Telephone Co.*, 62 N.Y.2d 494, 478 (1984)). There are two elements of collateral estoppel: (1) "an identity of issue which has necessarily been decided in the prior action and is decisive of the present action"; and (2) "a full and fair opportunity to contest the decision now said to be controlling." *Schwartz v. Pub. Adm'r of Bronx Cnty.*, 24 N.Y.2d 65, 71 (1969). Judge Chapman's ruling on collateral estoppel is a question of law subject to *de novo* review. *See Perez v. Danbury Hosp.*, 347 F.3d 419, 426 (2d Cir. 2003).

In the state court action, Appellant argued that she had not knowingly made material misrepresentations. Additionally, Appellant challenged the validity of the assignments to Respondents of the claims in question. In his June 27, 2013 judgment, Justice Ramos concluded:

13

"The evidentiary record establishes that the subject representations and omissions did occur, were related to material facts, were false, were made with the intent that the Plaintiffs rely upon the statements and that the Plaintiffs did rely on them to their detriment." *See* App. Item No. 1 Ex. B at 17-18.  Separately, after a trial of damages, Justice Ramos found damages of $5,848,648.30 in an Order and Judgment dated October 29, 2013.  *See* App. Item No. 11 at 2.  In addition, Justice Ramos found that Respondents' assignment of claims was valid as a way to consolidate the claims of the investors and was "clearly not champertous."  13-BK-01526 Dkt No. 10 Ex. 1 at 8.  Based on these findings, Judge Chapman found four issues relevant here subject to collateral estoppel in the bankruptcy proceedings: (1) that the Promoters made false representations and omissions to the Respondents; (2) that the Respondents relied on the false representations and omissions; and (3) that Respondents suffered a loss of $5,848,648.30 as the proximate consequence of the false representation or omission; and (4) that the assignment of claims to Respondents was valid. *See* App. Item No. 11 at 1-2.

Appellant contends that collateral estoppel was improperly applied for three reasons.  First, Appellant argues that granting collateral estoppel effect to issues decided by summary judgment is improper.  Second, Appellant argues that having the same attorney as her husband resulted in conflation of her and her husband's roles.  Finally, Appellant argues that Justice Ramos did not distinguish between promoters in determining who actually made the relevant misrepresentations and omissions.  *See* App. Br. at 22.

"It is well settled that a fully litigated and opposed summary judgment determination can constitute a full and fair opportunity to litigate a claim." *Deutsch v. Integrated Barter Int'l, Inc.*, 700 F. Supp. 194, 200 (S.D.N.Y. 1988) (citing *Blythe Indus., Inc. v. Puerto Rico Aqueduct & Sewer Auth.*, 607 F. Supp. 1386, 1388 (S.D.N.Y. 1985); *see also Weston Funding Corp. v.*

14

*Lafayette Towers, Inc.*, 550 F.2d 710, 713 (2d Cir. 1977) (state court summary judgment entitled to preclusive effect). Despite this settled precedent, Appellant argues that the decision on summary judgment should not be given preclusive effect because she was denied the opportunity to testify. *See* App. Br. at 22. While preclusion doctrine does require "a full and fair opportunity to litigate the issue" before a decision can be given preclusive effect, it does not require in-person testimony. *See Blythe*, 607 F. Supp. at 1388 ("Although the disposition . . . was by summary judgment based on affidavits, rather than a full trial, [the] decision nonetheless may have res judicata or collateral estoppel effect.") (citing *Jackson v. Hayakawa*, 605 F.2d 1121, 1125 n. 3 (9th Cir. 1979)). Justice Ramos's decision indicates that Appellant filed a submission and several affidavits opposing summary judgment in the state court action. *See* App. Item No. 1, Ex. B at 9-10. Because the lack of opportunity to testify and cross examine witnesses does not constitute lack of a full and fair opportunity to be heard when there is adequate opportunity to make written submissions, *see Blythe*, 607 F. Supp. at 1388, Appellant's challenge to Judge Chapman's collateral estoppel ruling on this ground fails.

Appellant further argues that being represented by the same counsel as her husband prevented her from receiving a ruling that distinguished between her and her husband. This is substantially similar to Appellant's third argument: that Justice Ramos's decision failed to determine which promoters actually made the false representations and omission at issue. Importantly, however, Appellant's involvement in making the misrepresentations or omissions was one of two issues reserved for trial before Judge Glenn. Judge Chapman's order specifically noted that "whether the Debtor herself made the misrepresentation and/or omissions at issue" was an issue retained for trial. App. Item No. 11 at 2. Because that issue was reserved for trial, it is not relevant to the collateral estoppel question.

15

In sum, the Court determines that Judge Chapman's ruling on collateral estoppel was correct. The issues of representation or omission, falsity, reliance, damages, and the validity of the assignments were identical in the state court and bankruptcy proceedings and Appellant had a full and fair opportunity to contest those issues at the summary judgment stage of the proceedings before Justice Ramos.

As a result, even if the Court had jurisdiction "to review the Bankruptcy's Court's determination on the merits," *see R. Brown & Sons, Inc. v. Rathe Salvage, Inc.*, No. 1:13-CV-00317-JGM, 2015 WL 791611, at *2 (D. Vt. Feb. 25, 2015), it would agree with Judge Chapman's determinations on collateral estoppel.

## V.     APPLICABILITY OF § 523(A)(4)

Appellant further challenges the bankruptcy court's handling of the nondischarge petition under § 523(a)(2)(A) rather than § 523(a)(4). Section 523(a)(4) makes nondischargeable any debt "for fraud or defalcation while acting in a fiduciary capacity," while § 523(a)(2)(A) reaches "any debt . . . for money, property, [or] services . . . to the extent obtained by – false pretenses, a false representation, or actual fraud." 11 U.S.C. § 523(a)(4). The fact that Appellant's conduct could also fall within § 523(a)(4) does not mean § 523(a)(2)(A) is inapplicable. Judge Glenn found each element of § 523(a)(2)(A) to be satisfied, and this Court has rejected Appellant's challenges to that finding. As a result, the finding of nondischargability under § 523(a)(2)(A) is proper, notwithstanding the possible application of § 523(a)(4).

## VI.    CONCLUSION

For the foregoing reasons, the judgment of the bankruptcy court is affirmed. This resolves Dkt. No. 1. The Clerk of the Court is directed to close the case.

SO ORDERED.

Dated: September 23, 2015
New York, New York

_____
ALISON J. NATHAN
United States District Judge

17